# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*U.S. Bank National Ass'n v. Manzo*, 2011 IL App (1st) 103115

---

| | |
|---|---|
| Appellate Court Caption | U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Structured Asset Investment Loan Trust 2006-1, Plaintiff-Appellee and Counterdefendant-Appellee, v. EZEQUIEL MANZO anad CECELIA YEPEZ, Defendants-Appellants (Ezequiel Manzo and Cecelia Yepez, Counterplaintiffs-Appellants; BNC Mortgage, Inc., Third-Party Defendant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-3115 |
| Filed | November 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendants' right to rescind the mortgage issued by plaintiff in the instant foreclosure action pursuant to the Truth in Lending Act expired when defendants failed to affirmatively rescind their loan within the three-year statute of repose imposed by section 1635(f), and their rescission claim brought in recoupment as a defense to the foreclosure was made too late; however, the cause was remanded for further proceedings on defendants' damages claim brought under section 1640 of the Act as a matter of defense by recoupment, even though the claim was made outside the one-year statute of limitations. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CH-12995; the Hon. Pamela H. Gillespie, Judge, presiding. |
| Judgment | Affirmed in part and reversed and remanded in part. |

| Counsel on Appeal | Lloyd Brooks and Charles M. Howell, both of Brooks Law Firm, of Homewood, for appellants. |
|---|---|
| | Robert J. Emanuel, Joanne A. Sarasin, and Melinda J. Morales, all of Much Shelist Denenberg Ament & Rubenstein, P.C., of Chicago, for appellee. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. |
| | Presiding Justice Lavin and Justice Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1    Ezequiel Manzo and Cecelia Yepez (hereinafter the Manzos), defendants and counterplaintiffs, appeal the circuit court's dismissal of their affirmative defense, counterclaim and third-party complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code of Civil Procedure) (735 ILCS 5/2-619 (West 2008)). The circuit court held that the Manzos' right to rescind a mortgage issued by plaintiff-appellee, U.S. Bank National Association, as trustee for the Structured Asset Investment Loan Trust 2006-1 (hereinafter, U.S. Bank), expired under the Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2006)) when they failed to exercise it within three years of receiving the mortgage. The Manzos contend that the circuit court's dismissal was improper because they, in fact, exercised their right to rescind prior to the expiration of those three years by notifying the bank of their intent to rescind through several documents sent to the bank within that time frame. The Manzos further contend that even if they failed to properly notify the bank of their intent to rescind prior to the expiration of the three-year time period, their rescission claim should nevertheless survive pursuant to the "right of rescission in recoupment under State law" exception of TILA (see 15 U.S.C. § 1635(i)(3) (2006)) and section 13-207 of the Illinois Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)). In addition, the Manzos contend that in dismissing their counterclaim as untimely filed the circuit court should not have also dismissed their section 1640 claim for damages (15 U.S.C. § 1640 (2006)) raised together with their rescission claim, but to which the three-year time frame articulated in section 1635(f) (15 U.S.C. § 1635(f) (2006)) did not apply. For the reasons that follow, we affirm in part and reverse and remand in part.

¶ 2                                I. BACKGROUND

¶ 3    The record reveals the following undisputed facts and procedural history. On November

-2-

18, 2005, the Manzos obtained a loan from BNC Mortgage, Inc. (hereinafter, BNC). As security for the loan, the Manzos gave BNC a mortgage on their home located at 5340 South Richmond Street in Chicago, Illinois. Less than a year later, on or about August 11, 2006, U.S. Bank, filed a foreclosure action against the Manzos, asserting itself as the holder of the BNC loan (both the note and the mortgage) and alleging that the Manzos were in default of that loan for failing to pay their monthly mortgage payments beginning on May 1, 2006.

¶ 4    On September 11, 2006, the Manzos filed a *pro se* answer to U.S. Bank's complaint. This answer was made on a one-page, fill-in-the-blank form provided by the circuit court and stated only that the Manzos were "working with the bank to reinstate the mortgage." On February 1, 2007, the Manzos, represented by counsel, filed an answer and affirmative defense to U.S. Bank's complaint, asserting only one affirmative defense, namely, that U.S. Bank had no standing as a plaintiff in the matter because no assignment was attached to the complaint.[1]

¶ 5    Thereafter, the Manzos' counsel sent a series of letters to U.S. Bank's counsel attempting to negotiate a settlement to the foreclosure action. The first letter, dated April 13, 2007, states in pertinent part:

"Although our clients ideally would like to enter a loan modification, there are several affirmative defenses that we could assert on behalf of the Manzos against your client *** if we are forced to litigate this matter. These affirmative defenses and/or counterclaims arise out of TILA violations."

The April 13 letter further alleges that the bank violated TILA when the lender failed to provide the Manzos with copies of their notice of the right to rescind and certain finance charges and fees were not *bona fide* reasonable or disclosed. In addition, the letter claims that the Manzos understood nothing that happened during the course of the closing because they speak only Spanish and a translator was not provided for them. The letter concludes by stating that "[i]n addition to the TILA violations outlined above, there are additional counterclaims and/or affirmative defenses the Manzos could assert arising out of violations of the Real Estate Settlement Procedures Act and from common law violations."

¶ 6    The Manzos' counsel sent a second letter to U.S. Bank on July 31, 2007, noting that the circuit court refused to set the case for further status "in the hopes that the parties could come to a loan modification agreement." The letter also states in pertinent part:

"Given *** that the Manzos are willing to pay $1280 per month, which would still allow your client a profit, it makes much more sense for the parties to avoid additional time and expense required to litigate this case. However, if we are forced to litigation, the Manzos will assert several counterclaims and/or affirmative defenses against your

---

[1]The record reveals that on March 14, 2007, the Manzos were granted leave to refile their answer and affirmative defense *instanter* because the court file was missing the original copy and the initial answer and affirmative defenses were missing several pages. The Manzos' refiled answer contained no additional affirmative defenses.

client \*\*\*.

As we previously described \*\*\* in our letter of April 13, 2007, these counterclaims and/or affirmative defenses arise out of violations of TILA, giving rise to an extended right to rescind the Note and Mortgage which extends to any assignee."

¶ 7        On August 30, 2007, the Manzos' counsel sent a third letter to U.S. Bank. According to that letter, "in the interest of settlement" and upon U.S. Bank's request, the Manzos attached a hardship letter and a financial worksheet describing their current financial status. The letter further states that it is written "for settlement purposes only" and should not be construed as any type of admission by the Manzos. The letter explains that the Manzos fell behind on their loan payments because they were scammed by some acquaintances into refinancing their home and the refinanced mortgage resulted in payments that were well beyond their means. It further states that prior to the refinancing, the Manzos had lived in their home for over 13 years and they had never missed a monthly payment, which was approximately $1,280 a month. The letter concludes:

"If we are forced to litigate this case on behalf of the Manzos, we will assert several counterclaims and/or affirmative defenses on their behalf against the lender, against the initial lender, and against the mortgage company. These counterclaims and/or affirmative defenses arise out of violations of TILA, giving rise to an extended right to rescind the Note and Mortgage which extends to any assignee."

¶ 8        On December 14, 2007, the Manzos' counsel sent yet another, fourth, letter to U.S. Bank, attaching to it a copy of the Manzos' proposed counterclaim and third-party complaint (hereinafter counterclaim). The letter stated in full: "Enclosed please find draft Counterclaim and Third Party Action. Please call me after you have had an opportunity to review the enclosed so we can discuss this matter further."

¶ 9        The proposed counterclaim attached to the letter alleged that the "[b]orrowers [were] bring[ing] this action against their mortgage lender and its assignee for *rescission and damages* pursuant to TILA for the lender's failure to clearly and conspicuously disclose the borrower's right to cancel a mortgage loan." (Emphasis added.) The counterclaim also contained the following language: "[t]he Borrowers, by the filing of this action, elect to rescind the subject transaction."

¶ 10       It appears that the mailing of the proposed counterclaim had no impact on the settlement negotiations, because on March 11, 2008, the Manzos filed a motion for leave to file their counterclaim, to which they attached a copy of the same proposed counterclaim they had sent to U.S. Bank in their December 14 letter. The motion for leave to file specifically asserted that "[the Manzos] now seek an opportunity to cancel the subject transaction by filing a counterclaim and third party action herein, seeking damages and rescission." The circuit court granted the Manzos' request for leave to file their counterclaim on March 11, 2008. The Manzos, however, waited eight months before filing their counterclaim on November 19, 2008. The counterclaim was filed exactly three years and one day after the Manzos had entered into the loan agreement with their original lender, BNC.

-4-

¶ 11	On March 11, 2009, U.S. Bank moved to dismiss the Manzos' counterclaim pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) on the basis of timeliness. Specifically, U.S. Bank argued that because the Manzos did not provide notice of rescission within the three-year period defined by section 1635(f) of TILA (15 U.S.C. § 1635(f) (2006)), their claim for rescission should be barred as untimely. In response, the Manzos asserted that their rescission claim was timely filed because the letters they sent to U.S. Bank, as well as the motion for leave to file their counterclaim, all made within the three-year statutory period, effectively fulfilled the "notice by written communication requirement" of TILA. In the alternative, the Manzos contended that even if their rescission claim was untimely under section 1635(f) of TILA (15 U.S.C. § 1635(f) (2006)), when considered in conjunction with the Illinois savings statute found in section 13-207 of the Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)), it should survive as a timely filed claim for recoupment.

¶ 12	On October 16, 2009, the circuit court in a written order dismissed the Manzos claims in their entirety pursuant to sections 2-619(a)(5) and (a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5), (a)(9) (West 2008)). The Manzos now appeal contending that dismissal was improper because: (1) their election to rescind was made within the three-year statutory period; (2) even if it had not been made within that period, it would survive under the "right of rescission in recoupment under State law" as permitted pursuant to section 1635(i)(3) of TILA (see 15 U.S.C. § 1635(i)(3) (2006)) and the "Illinois savings statute" in section 13-207 of the Code of Civil Procedure (see 735 ILCS 5/13-207 (West 2008)); and (3) in any event, their claim for damages under section 1640 of TILA (15 U.S.C. § 1640 (2006)) was not untimely and should not have been dismissed together with the rescission claim.

¶ 13	II. ANALYSIS

¶ 14	A motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) admits the legal sufficiency of the complaint (*i.e.*, all facts well pleaded), but asserts certain defects, defenses or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); see also *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). Subsection (a)(5) of section 2-619, pursuant to which U.S. Bank's motion was brought, specifically allows dismissal when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2008). Similarly, subsection (a)(9) permits involuntary dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). The phrase "affirmative matter" refers to something "in the nature of a defense that negates the cause of action completely." *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

¶ 15	In ruling on a section 2-619 motion, all pleadings and supporting documents must be construed in a light most favorable to the nonmoving party, and the motion should be granted

only where no material facts are in dispute and the defendant is entitled to dismissal as a matter of law. *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34 (1994). The relevant inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review the circuit court's grant of a motion to dismiss pursuant to section 2-619 is *de novo*. *Peregrine Financial Group, Inc. v. Futronix Trading, Ltd.*, 401 Ill. App. 3d 659, 660 (2010); see also *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 668 (1996).

¶ 16                           A. Rescission Pursuant to TILA

¶ 17     The first question we must answer is whether the Manzos timely elected to rescind their mortgage pursuant to section 1635(f) of TILA (15 U.S.C. § 1635 (2006)). For the reasons that follow, we find that they did not.

¶ 18     We begin by noting that Congress enacted TILA to "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (2006); see also *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998). Consequently, pursuant to TILA creditors are required to provide borrowers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest and the borrower's rights." *Beach*, 523 U.S. at 412 (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638 (1994)). Failure to satisfy these disclosure requirements subjects a creditor to criminal penalties for noncompliance (see 15 U.S.C. § 1611 (2006)), as well as to statutory damages traceable to the creditors' failure to make the requisite disclosures (see 15 U.S.C. § 1640 (2006)).

¶ 19     More specifically, section 1635(a) of TILA permits a borrower, whose loan was secured by his or her principal dwelling, to rescind the loan in its entirety if the loan agreement failed to make the requisite disclosures. See 15 U.S.C. § 1635(a) (2006); see also *Beach*, 523 U.S. at 412. A borrower who exercises this right to rescind "is not liable for any finance or other charge, and any security interest given by [him], including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(b) (2006)); see also *Beach*, 523 U.S. at 412. "Within 20 days after receiving notice of rescission, the lender must 'return to the [borrower] any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.' " *Beach*, 523 U.S. at 412-13 (quoting 15 U.S.C. § 1635(b) (1994)).

¶ 20     A borrower's right to rescission under TILA, however, is not indefinite. Subsection (f) of section 1635 titled "Time limit for exercise of right," specifically provides:

       "An obligor's right of rescission shall expire *three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first*,

notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor ***." (Emphasis added.) 15 U.S.C. § 1635(f) (2006).

¶ 21 In *Beach*, the United States Supreme Court interpreted the language of section 1635(f) as completely extinguishing the right of rescission at the end of the three-year period, and thereby absolutely barring a borrower from asserting the right to rescind as an affirmative defense in a foreclosure action if brought more than three years after the consummation of the transaction. *Beach*, 523 U.S. at 412-14. The Supreme Court acknowledged that statutes of limitation generally do not prevent parties from asserting defenses that would otherwise be time-barred if brought as offensive claims. *Beach*, 523 U.S. at 415. The Supreme Court, however, then found that the three-year deadline in section 1635(f) was not a statute of limitations but a statute of repose, "operat[ing], with the lapse of time, to extinguish the right which is the foundation for the claim." (Internal quotation marks omitted.) *Beach*, 523 U.S. at 416. According to *Beach*, the text of section 1635(f) makes clear that the three-year deadline does not pertain to "a suit's commencement but [to the rescission] right's duration, which [the statute] addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous." *Beach*, 523 U.S. at 417. Thus, the Supreme Court held that "§ 1635(f) completely extinguishes the right of rescission at the end of the [three]-year period." *Beach*, 523 U.S. at 412. The Supreme Court further reasoned that this interpretation "makes perfectly good sense" because absent such a hard-and-fast rule, "a statutory right of rescission could cloud a bank's title on foreclosure." *Beach*, 523 U.S. at 418.

¶ 22 As shall be more fully discussed below, however, in coming to this decision, the Supreme Court left unanswered how state recoupment laws might work to extend the three-year period when raised as a defensive claim in a foreclosure action. See *Beach*, 523 U.S. at 418 n.6 ("Since there is no claim before us that Florida law purports to provide any right to rescind defensively on the grounds relevant under the Act, we have no occasion to explore how state recoupment law might work when raised in a foreclosure proceeding outside the [three]-year period.").

¶ 23 Turning to the facts of this case, under *Beach* it is apparent that the Manzos could proceed with their TILA rescission claim only if they elected to rescind within the three-year federally mandated statute of repose. The Manzos contend that they did in fact elect to rescind the loan within those three years. Although the Manzos concede that they did not file their counterclaim until one day after the three-year statutory period expired, they nevertheless point out that within those three years, they: (1) sent several letters to U.S. Bank, including a proposed draft of their counterclaim; and (2) filed a motion for leave to file their counterclaim, in which they repeatedly expressed their intent to rescind. The Manzos contend that the letters and the motion for leave to file their counterclaim were sufficient because they alerted U.S. Bank of their intent to rescind. U.S. Bank, on the other hand, contends that nothing less than an unequivocal notice that the Manzos were rescinding could have sufficed. For the reasons that follow, we agree with U.S. Bank.

¶ 24    We begin by noting that the *Beach* decision did not discuss the method for exercising the right to rescind under TILA. Our state courts have similarly not had an opportunity to address this issue. Accordingly, we are faced with a case of first impression in Illinois.[2] We therefore turn to the statute itself.

¶ 25    TILA provides the following guidelines with respect to the method of rescission. Section 1635(a) provides that "the obligor shall have the right to rescind *** *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.*" (Emphasis added.) 15 U.S.C § 1635(a) (2006). The Board referenced in the section is the Federal Reserve Board, which is vested with the power to promulgate regulations regrading the interpretation and implementation of TILA. 15 U.S.C. § 1604(a) (2006); see also 15 U.S.C. § 1602(b) (2006). TILA's implementing regulation, known as "Regulation Z" (12 C.F.R. § 226 *et seq*. (2006)) provides that:

> "[t]o exercise the right to rescind, the consumer *shall notify the creditor of the rescission* by mail, telegram *or other means of written communication*. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." (Emphasis added.) 12 C.F.R. § 226.23(a)(2).

---

[2]We note that there appears to be a rising split in authority over whether an order to stop the ticking of the three-year clock, the debtor must file a complaint in addition to providing notice of rescission to the creditor. See *Bradford v. HSBC Mortgage Corp.*, No. 1:09cv1226, 2011 WL 3047490, at *6 (E.D.Va. July 22, 2011) ("Indeed, the interpretation of § 1635(f) has led to a three-way split of authority. According to the first group of cases *** a complaint seeking rescission is time-barred if it is not filed within three years of closing regardless of whether the borrower mailed a timely rescission notice to the creditor. [See, *e.g.*, *DeCosta v. U.S. Bancorp*, No. DKC 10-0301, 2010 WL 3824224, at *5-7 (D. Md. Sept. 27, 2010); *Gilbert v. Deutsche Bank Trust Co. Americas*, No. 4:09-CV-181-D, 2010 WL 2696763, at *5 (E.D.N.C. July 7, 2010); *In re Salazar*, No. 10-10165-TJC, 2011 WL 1237648, at *3-4 (Bankr. D. Md. Mar. 30, 2011); *Rosenfield v. HSBC Bank, USA*, No. 10-CV-00058-MSK-MEH, 2010 WL 34899216, at *14 (D. Colo. Aug. 31, 2010); *Sam v. American Home Mortgage Servicing*, No. CIV. S-09-2177 LKK/KJM, 2010 WL 761228, at *2-3 (E.D. Cal. Mar. 3, 2010); *Nix v. Option One Mortgage Corp.*, No. Civ. 05-03685(RBK), 2006 WL 166451, at *4 (D.N.J. Jan. 19, 2006).] On the other end of this spectrum of authorities, some cases have held that a rescission action is timely regardless of when it was filed provided the borrower gave the creditor notice of rescission within the three-year period. [See, *e.g.*, *Jackson v. CIT Group/Consumer Finance, Inc.*, No. 2:06-cv-543, 2006 WL 3098767, at *7 (W.D. Pa. Oct. 30, 2006).] Finally, a third group of cases take what might be described as a middle approach, concluding that sending the creditor notice of rescission satisfies the three-year deadline, and the creditor's failure to respond to a valid notice of rescission in turn triggers the general one-year statute of limitations for TILA violations, 15 U.S.C. § 1640(e). [See, *e.g.*, *In re Hunter*, 400 B.R. 651, 662 (Bankr. N.D. Ill. 2009); *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 40 (D.D.C. 2006)]." However, none of these cases appear to dispute that to stop the ticking of the three-year clock, notice of rescission to the creditor is mandatary. Moreover, the parties have pointed to no case, and our research has revealed none, that squarely addresses what constitutes appropriate and sufficient notice of rescission to the creditor.

¶ 26 Appendix H of Regulation Z, titled "H-8: Rescission Model Form (General)," instructs the consumer by example on how to elect to rescind. Form H-8 provides in pertinent part:

> "How to Cancel
>
> If you decide to cancel this transaction, you may do so by notifying us in writing, at
>
> (creditor's name and business address).
>
> You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. ***
>
> If you cancel by mail or telegram, you must send the notice no later than midnight of (date) ***. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
>
> I WISH TO CANCEL
>
> _____          _____
>
> Consumer's Signature                                    Date"

¶ 27 Regulation Z and the official staff commentary are generally dispositive unless contrary to the express language of TILA or otherwise irrational. *Household Credit Services, Inc. v. Pfenning*, 541 U.S. 232 (2004); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("deference is especially appropriate in the process of interpreting [TILA] and Regulation Z"; "[u]nless demonstrably irrational, *** Board staff opinions construing the Act or Regulation should be dispositive"); see also *Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 528 (7th Cir. 2007) ("[c]ourts pay particular heed to the [Board] Staff Commentary to TILA's regulations when evaluating an alleged TILA violation").

¶ 28 Reading Regulation Z with section 1635(a), we conclude that the letters sent by the Manzos to U.S. Bank as well as the motion for leave to file their counterclaim did not constitute sufficient notification. Both section 1635(a) and Regulation Z explicitly require the borrower to notify the creditor of the rescission itself. See 15 U.S.C § 1635(a) (2006) ("the obligor shall have the right to rescind *** *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis added)); 12 C.F.R. § 226.23(a)(2) (2006) ("[t]o exercise the right to rescind, the consumer *shall notify the creditor of the rescission* by mail, telegram *or other means of written communication*" (emphasis added)); see also 12 C.F.R. § 226 app. H (2008) (Model form H-8 instructs a borrower to rescind by signing a form that unequivocally states "I wish to cancel."). Although Regulation Z is flexible with respect to the type of written communication that may be used by a borrower to give notice of rescission to the creditor,[3] it requires that the written communication clearly state that the borrower is rescinding the mortgage in the present; it nowhere speaks of merely notifying the creditor of an intention to rescind at some

---

[3] Form H-8 permits a borrower to rescind by mailing to the creditor a signed form that merely states "I wish to rescind."

unspecified point in the future. See 12 C.F.R. § 226.23(a)(2) (2006); see also *Golliday v. First Direct Mortgage Co.*, No. 1:09-CV-526, 2009 WL 5216141, at \*2 (W.D. Mich. Dec. 29, 2009) ("Although a notice of rescission does not need to follow any particular form or include any particular language, it must give clear notice of the consumer's intention to rescind. 'The clear intention of the statue and regulations are to make sure that the creditor gets notice of plaintiffs' consumer intention to rescind.' [Citation.]"). Nothing but confusion could result if rescission were exercised by a borrower stating a mere intention to rescind in the future. This is particularly true where the statute requires that once the borrower notifies the creditor of rescission, the creditor has 20 days to return to the borrower any money or property taken as a down payment. See 15 U.S.C. § 1635(b) (2006) ("Within 20 days after receipt of a notice of rescission, the creditor shall return to the [obligor] any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."); see also 12 C.F.R. § 226.23(d)(2) (2006) ("Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.").

¶ 29    Moreover, Regulation Z also provides that rescission is automatic upon the consumer's notice. 12 C.F.R. § 226.23(d)(1) (2006) ("When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge."). It follows that since rescission is automatic upon notification, notification must be clear and cannot be conditional or qualified. See *Golliday*, 2009 WL 5216141, at \*2 (citing *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992)).

¶ 30    In the present case, a review of the record reveals that neither the letters nor the motion for leave to file the counterclaim affirmatively and clearly stated the Manzos' unqualified and present intent to rescind the loan.

¶ 31    The letters sent by the Manzos' counsel to U.S. Bank were sent for purposes of settlement negotiations, in an attempt to use the possibility of a TILA rescission claim as leverage in convincing U.S. Bank to modify the loan agreement. Three of those letters specifically use conditional language and state that *if* a loan modification agreement could not be reached and the Manzos were forced to litigate, they "could assert" several counterclaims and affirmative defenses "arising out of violations of TILA," including their right to rescind the loan. Even when construing these letters in the light most favorable to the Manzos, their repeated use of the conditional language establishes that they were referring merely to the possibility of rescission, and that they were postponing their exercise of their right to rescind in the hopes of reaching a loan modification agreement.

¶ 32    The fourth and last letter and the motion for leave to file the counterclaim similarly do not constitute sufficient written communication of rescission. The fourth letter contained a copy of the "draft" of the Manzos' counterclaim seeking rescission and merely asked that U.S. Bank's counsel contact the Manzos' attorney after reviewing the counterclaim. The

attached proposed counterclaim nowhere states that the Manzos had previously elected to rescind through their letters, nor did it indicate that the Manzos were electing to rescind in the present. Instead the proposed counterclaim alleges violations of TILA and then explicitly states "[t]he Borrowers, *by filing of this action*, elect to rescind the subject transaction." (Emphasis added.) This restrictive language reveals that the Manzos intended to rescind the loan by filing, and only by filing, their counterclaim.

¶ 33 The counterclaim attached to the Manzos' motion for leave to file contains the exact same qualifying language. Accordingly, since the Manzos did not file their counterclaim immediately upon the granting of their motion for leave to file, but waited eight months, missing the three-year period by one day, they cannot now in good faith contend that they intended to rescind the loan when they sent the fourth letter to U.S. Bank or when they sought leave to file their counterclaim.

¶ 34 The circuit court below recognized the unfortunate choice of language in the Manzos' counterclaim:

"The language used in the letters, motion and counterclaim was chosen by the Manzos. They inserted the qualifying language–it was not imposed upon them. If that language had not been included, the Court would likely come to a different conclusion; however; the [Manzos] chose to predicate the exercise of their right to rescind on the filing of the counterclaim and then failed to file it before the three year limitation period expired. There is nothing inappropriate with that litigation tactic. However, if a party chooses to engage that strategy, they must keep close tabs on the days and years as they pass so that their right to rescind does not expire before it is actually exercised."

¶ 35 We agree with this reasoning of the circuit court and find that the Manzos failed to affirmatively rescind their loan within the three-year statute of repose imposed by section 1635(f) of TILA (15 U.S.C. § 1635(f) (2006)). Accordingly, their rescission claim was properly dismissed.

¶ 36                                  B. Rescission in Recoupment

¶ 37 The Manzos nevertheless contend that even if their election to rescind was not made within TILA's requisite three-year period, their rescission claim should nevertheless survive because it was brought as a claim for recoupment under Illinois law in defense of the foreclosure action. Specifically, the Manzos point out that section 1635(i)(3) of TILA permits them to proceed with their claim outside of the three-year statutory period if that claim is brought as a "defense in recoupment" under Illinois law. See 15 U.S.C. § 1635(i)(3) (2006) ("Nothing in this subsection affects a consumer's right of rescission in recoupment under State law."). Because there is no Illinois statute that speaks specifically of TILA rescission in recoupment claims, the Manzos rely on section 13-207 of our Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)) as statutory authorization for filing a rescission in recoupment claim after the three-year deadline has expired. That section states in pertinent part:

"A defendant may plead a set-off or counterclaim *barred by the statute of limitation*, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." (Emphasis added.) 735 ILCS 5/13-207 (West 2008).

¶ 38    In *Wells Fargo Bank, N.A. v. Terry*, 401 Ill. App. 3d 18 (2010), *appeal denied,* 237 Ill. 2d 592 (2010), our appellate court recently had the opportunity to interpret section 13-207 and address the same issue raised here by the Manzos on appeal. The court in *Terry* found that Illinois law, and more specifically section 13-207, does not authorize an action in recoupment in defense of foreclosure actions brought outside of the three-year requisite TILA period.

¶ 39    In that case, Terry had a refinance mortgage with Wells Fargo Bank that she alleged violated certain TILA disclosure requirements. *Terry*, 401 Ill. App. 3d at 19. When Terry failed to make payments on her note, Wells Fargo filed an action to foreclose on Terry's property. *Terry*, 401 Ill. App. 3d at 19. In response, Terry filed an affirmative defense, a counterclaim and a third-party complaint seeking rescission under TILA. *Terry*, 401 Ill. App. 3d at 19. Wells Fargo then filed a motion to dismiss on the basis of timeliness, which was granted by the circuit court. *Terry*, 401 Ill. App. 3d at 19. On appeal, Terry conceded that more than three years had elapsed between the closing of her refinance mortgage and the filing of her claim for rescission under TILA, which suggested that her claim was time-barred. *Terry*, 401 Ill. App. 3d at 20. However, Terry argued that she brought the claim for recoupment in defense to Wells Fargo's foreclosure action and therefore the three-year expiration date did not preclude her TILA rescission claim, so long as it was permitted under Illinois law. *Terry*, 401 Ill. App. 3d at 20. In support of her position that Illinois law permitted recoupment claims, Terry, just as the Manzos here, cited to section 13-207 of the Illinois Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)). *Terry*, 401 Ill. App. 3d at 21.

¶ 40    The appellate court in *Terry* disagreed and found that nothing in Illinois law preserved Terry's right of rescission in recoupment analogous to a right of rescission under TILA that would provide an exception to the three-year TILA rescission period. *Terry*, 401 Ill. App. 3d at 21-23. The *Terry* court first explained that in Illinois recoupment is "a cross-action in which a defendant alleges that it has been injured by a breach by plaintiff of another part of the contract on which the action is founded." (Internal quotation marks omitted.) *Terry*, 401 Ill. App. 3d at 21 (quoting *Cox v. Doctor's Associates, Inc.*, 245 Ill. App. 3d 186, 199 (1993), citing 735 ILCS 5/2-608 (West 2008)). The *Terry* court then noted that Illinois law would permit Terry's claim to survive the expiration of the thee-year period as a defensive claim against the lender's action only if section 1635(f) of TILA (15 U.S.C. § 1635(f) (2006)) were a statute of limitations. *Terry*, 401 Ill. App. 3d at 21 (citing *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 437 (2005) (counterclaim otherwise barred by statute of limitations permitted to proceed where plaintiffs' underlying claim was timely)). In doing so, the court in *Terry* specifically cited to the language of section 13-207 of the Code of Civil Procedure, noting that it permits a defendant only to plead a setoff or a counterclaim if "barred by [a] statute of limitations." *Terry*, 401 Ill. App. 3d at 21 (citing 735 ILCS 5/13-207 (West 2008)).

¶ 41　　The *Terry* court explained that the United States Supreme Court in *Beach* made clear that section 1635(f) of TILA (15 U.S.C. § 1635(f) (2006)) is a statute of repose and not a statute of limitation, because it speaks " 'not of a suit's commencement but of a right's duration.' " *Terry*, 401 Ill. App. 3d at 21 (quoting *Beach*, 523 U.S. at 417); see also *In re Hunter*, 400 B.R. 651, 660 (Bankr. N.D. Ill. 2009) ("[s]ection 1635(f) is a statute of repose, not a statute of limitations"). The *Terry* court then noted that Illinois law observes the same distinction between a statute of limitations and a statute of repose, noting that " 'a statute of limitations governs the time within which lawsuits may be commenced after a cause of action has accrued, while a statute of repose extinguishes the action itself after a fixed period of time, regardless of when the action accrued.' " *Terry*, 401 Ill. App. 3d at 21 (quoting *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006)). Accordingly, the court in *Terry* concluded that Terry had no right to bring her rescission claim in recoupment under Illinois law outside of the three-year statute of repose imposed by TILA.

¶ 42　　The Manzos acknowledge the decision in *Terry* but ask that we reject it and instead rely on *Limer v. Lyman*, 241 Ill. App. 3d 125, 128 (1993), and *Jain v. Johnson*, 398 Ill. App. 3d 135, 143 (2010), two decisions wherein the courts permitted claims to proceed even though they had expired under statutes of repose. Unlike *Terry*, however, neither of these decisions deals directly with section 13-207 of the Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)), or with TILA rescission claims brought outside of the three-year statute of repose imposed by TILA. See *Limer*, 241 Ill. App. 3d at 127 (interpreting section 13-209 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch.110, ¶ 13-209), which permits survival of causes of action where a party entitled to bring an action dies, as not prohibiting the refiling of an action by the four-year statute of repose applicable to medical malpractice actions); *Jain*, 398 Ill. App. 3d at 139 (interpreting section 13-217 (735 ILCS 5/13-217 (West 2008)) of the Code of Civil Procedure, which permits an action to be refiled "within one year or within the remaining period of limitation" after being dismissed for want of prosecution, as having provided an exception to a six-year statute of repose for legal malpractice actions, permitting a client whose malpractice action was dismissed for want of prosecution after expiration of the statute of repose to refile the action; noting that the term "period of limitation" was ambiguous as to whether it applied to a statute of repose). Section 13-207 is the only Illinois statute pursuant to which the Manzos sought, and for that matter, could seek, to proceed with a rescission claim in recoupment, and the plain language of that section explicitly permits a counterclaim to be filed only if barred by a "statute of limitations."[4] Accordingly, we agree with the rationale of *Terry* and decline the Manzos' invitation to reevaluate its holding.

¶ 43　　Applying *Terry* we are compelled to conclude that since the Manzos filed their claim one year and one day after the date of the consummation of the mortgage, even their rescission claim brought in recoupment as a defense to the foreclosure action was made too late.

---

[4]Although the Illinois legislature could allow a rescission in recoupment claim to be filed after the three-year TILA limit has run, it has so far not chosen to do so.

-13-

¶ 44                                    C. Damages

¶ 45        The Manzos finally contend that even if their claim for rescission was properly dismissed as untimely, the circuit court should not have dismissed their claim for damages, which was plainly stated in their counterclaim, and which was timely brought pursuant to section 1640(e) of TILA (15 U.S.C. § 1640(e) (2006)).

¶ 46        U.S. Bank does not dispute that the damage claim should have been separately evaluated by the circuit court. Nevertheless it initially contends that this issue is waived for purposes of appeal because it was not properly argued before the circuit court. See *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 534 (1994) ("issues not raised in the trial court may not be raised for the first time on appeal"). We disagree.

¶ 47        The record reveals that the Manzos complaint sought both rescission and damages. The counterclaim specifically stated:

> "Borrowers bring this action against their mortgage lender and its assignee for *rescission and damages* pursuant to TILA for the lender's failure to clearly and conspicuously disclose the borrower's right to cancel a mortgage loan." (Emphasis added.)

When U.S. Bank filed its motion to dismiss the counterclaim on timeliness grounds, it only argued the untimeliness of the rescission claim pursuant to section 1635(f), and nowhere argued the untimeliness of the damages claim under section 1640(e). The circuit court, however, dismissed the Manzos' counterclaim as untimely in its entirety, without providing an explanation as to why, in addition to the rescission claim, it also found the damages claim time-barred. We must therefore consider whether the dismissal of this portion of the counterclaim was made in error.[5]

¶ 48        Section 1640 of TILA authorizes civil liability in the form of actual damages, statutory damages, costs and attorney fees for lenders who violate the disclosure requirements of the Act. See 15 U.S.C. § 1640(a) (2006). Section 1640(e), however, specifies a one-year statute of limitations for any such civil liability claims under TILA. 15 U.S.C. § 1640(e) (2006). That section states in pertinent part:

> "Any action under this section may be brought *** within one year from the date of the occurrence of the violation ***. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more

---

[5]In that respect, we note that the waiver rule "is a limitation on the parties and not the jurisdiction of the courts" and we could choose to address it on the merits. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996); see also *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 518-19 (2000) (same) (citing *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 278 (1996); *Wagner v. City of Chicago*, 166 Ill. 2d 144, 148 (1995); *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 251 (1994); *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967)); see also *People v. Hoskins*, 101 Ill. 2d 209, 219 (1984).

than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640(e) (2006).

¶ 49    In the present case, the Manzos concede they did not raise their damages claim within one year of the alleged occurrence of the violation. They contend, however, that pursuant to section 13-207 of the Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)), they may proceed with their claim even outside of the one-year statute of limitations period since their damage claim is being brought as a matter of defense by recoupment. For the reasons that follow, we agree.

¶ 50    Federal courts that have consistently interpreted the language of section 1640(e) (15 U.S.C. § 1640(e) (2006)) as creating a statute of limitations and not a statute repose, like the one found in section 1635(f) (15 U.S.C. § 1635(f) (2006)). See, *e.g.*, *Beach*, 523 U.S. at 418 (noting the disparate treatment by Congress of sections 1635(f) and 1640(e) and confirming that state law recoupment of damage claims survive TILA's one-year statute of limitations). These courts have repeatedly found that section 1640(e) permits the application of state recoupment statutes and allows for the filing of a damages claim after the one-year limitations period has expired. See, *e.g.*, *In re Coxson*, 43 F.3d 189, 193-94 (5th Cir. 1995); *In re Wentz*, 393 B.R. 545, 555-57 (Bankr. S.D. Ohio 2008); *In re Norris*, 138 B.R. 467 (Bankr. E.D. Pa. 1992); *In re Woolaghan*, 140 B.R. 377 (Bankr. W.D. Pa. 1992).

¶ 51    Illinois courts have followed suit, and similarly allowed § 1640(e) TILA damage claims to be brought in recoupment pursuant to section 13-207 of the Code of Civil Procedure (735 ILCS 5/13-207 (West 2008)) long after the one-year time limit has expired. See *Mt. Vernon Memorial Estates, Inc. v. Wood*, 88 Ill. App. 3d 666 (1980) (holding that counterclaim alleging damages for violations of TILA could be maintained, even though it was filed more than one year after alleged violations as required under section 1640(e), where it was brought pursuant to section 13-207 of the Code of Civil Procedure); see also *National Boulevard Bank of Chicago v. Thompson*, 85 Ill. App. 3d 1145, 1146 (1980) (same).

¶ 52    As we have already discussed the language of section13-207 above in detail noting that it specifically permits claims for setoffs or counterclaims to be brought if they have been barred by a "statute of limitations," we see no reason why the Manzos should have been prohibited in continuing with their section 1640 damages claim under Illinois law.

¶ 53    Since the circuit court provided no explanation as to its dismissal of the Manzos' damages claim, and we find no reason why that claim should be time-barred, we remand for further proceedings on this issue.

¶ 54                                    III. CONCLUSION

¶ 55    For the foregoing reasons, we affirm the judgment of the circuit court with respect to the TILA rescission claim (15 U.S.C. § 1635 (2006)), but remand for further proceedings on the damages claim (15 U.S.C. § 1640 (2006)).

¶ 56        Affirmed in part and reversed and remanded in part.